UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FELIX DARRELL DIXON, JR.,

                Plaintiff,

v.                                               Case No. 23-cv-85-pp

DR. ERIC LEE and THE UNIVERSITY OF
WISCONSIN-MADISON HOSPITAL,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Felix Darrell Dixon, Jr., who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On February 14, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $1.34. Dkt. No. 7. The court received that fee on March 7, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

2

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants Dr. Eric Lee, who works at the University of Wisconsin-Madison Hospital, and the hospital itself. Dkt. No. 1 at 1–2. The complaint alleges that on May 11, 2022, two correctional officers (who are not defendants) escorted the plaintiff to the hospital for an appointment with Dr. Lee. Id. at 2. The appointment was scheduled so Dr. Lee could remove a hard cast from the plaintiff's left hand and remove two surgical pins that were in his hand. Id. During the appointment, a nurse removed the cast without incident, but Dr. Lee noticed that one of the surgical pins was protruding from the plaintiff's hand. Id. He removed the pin and then

attempted to locate the second one, but he was unable to find it. Id. A nurse brought a portable x-ray machine to find the second pin, which Dr. Lee discovered was "lodged in the bone" in the plaintiff's wrist or hand. Id. at 2–3. The plaintiff asked Dr. Lee if he would have to schedule a second surgery to remove the pin, but Dr. Lee told the plaintiff that "he believed he could retrieve it and was gonna try." Id. at 3.

The complaint alleges that Dr. Lee used a scalpel to make an incision in the plaintiff's left thumb "and began digging in [his] hand with surgical scissors." Id. The plaintiff says that "this was extremely painful despite the numbing agent Dr. Lee applied to lessen the pain." Id. After Dr. Lee spent thirty minutes "digging in [the plaintiff's] hand blind," the plaintiff says that "it started to feel like something was ripping in [his] hand." Id. He told Dr. Lee, who assured the plaintiff "he was almost done." Id. A nurse entered the room and asked Dr. Lee if everything was okay while "noticeably cringing." Id. Dr. Lee "quickly dismissed her and continued to dig in the plaintiff's] hand." Id. The plaintiff alleges that both officers who escorted him to the appointment also were cringing and had to look away several times. Id. The plaintiff asked Dr. Lee "could we just call it quits" because of the "excruciating pain," but Dr. Lee assured him "that he almost had it, and that he knew he could get it." Id. at 3–4.

The plaintiff alleges that after an hour, he "began to beg Dr. Lee to stop" because he "absolutely could take no more." Id. at 4. He says that "the pain in [his] hand was unbearable and the ripping sensation was like nothing [he] ever

4

felt before, this was pain on another level entirely." Id. Dr. Lee agreed to stop and had the nurse apply a new cast to the plaintiff's hand. Id. The plaintiff says his hand had become swollen, and his "fingers were tight with blood." Id. On May 13, 2022, the plaintiff was taken on an emergency trip to Belin Health in Green Bay to have the cast removed and replaced "because of the pain and swelling as a result of what Dr. Lee did to [his] hand." Id.

The plaintiff seeks monetary damages. Id. at 5. He specifies in a supplement to his complaint that he seeks $1 million—$500,000 each in compensatory and punitive damages. Dkt. No. 4-1 at 2. He asserts that Dr. Lee violated his rights under the Eighth and Fourteenth Amendments. Id.

C.     Analysis

The plaintiff's allegations amount to a claim under the Eighth Amendment, which protects a convicted, incarcerated person from cruel and unusual punishments. See generally Wilson v. Seiter, 501 U.S. 294 (1991). "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). An Eighth Amendment claim consists of an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The plaintiff must show both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303).

The plaintiff alleges that he saw Dr. Lee for an appointment to remove his cast, which was performed without issue. Dr. Lee also removed one surgical pin from the plaintiff's wrist without issue. But he could not locate the second pin and spent over an hour "digging" in the plaintiff's hand trying to find the pin. The plaintiff says he repeatedly told Dr. Lee that his actions were causing him great pain, despite the numbing agent Dr. Lee had used on the plaintiff's hand. He eventually begged Dr. Lee to stop digging in his hand because the pain was too great to bear. The plaintiff says his hand swelled up after the failed procedure, and he had to have the cast Dr. Lee reapplied removed two days later because of the continued pain and swelling. These allegations suggest that what began as a routine medical procedure became near torture as Dr. Lee used scissors in the plaintiff's hand and wrist. Although some pain can be expected from most surgical procedures, what the plaintiff describes went far beyond that typical expectation. The court finds that the plaintiff sufficiently alleges that Dr. Lee knowingly inflicted unnecessary pain during the surgical procedure despite the plaintiff's repeated pleas that he stop. The court will allow him to proceed on this claim under the Eighth Amendment.

The plaintiff seeks to sue Dr. Lee, who works at the UW Madison Hospital. Some, but not all, UW Hospital employees are considered state employees; whether they are depends on the capacity in which they work at the hospital. See Kreger-Mueller v. Shiner, No. 18-CV-708-JDP, 2020 WL 429448, at *2 (W.D. Wis. Jan. 28, 2020) (citing Wis. Stat. §233.17, and Suchomel v. Univ. of Wis. Hosp. & Clinics, 708 N.W.2d 13, 20 (Wis. Ct. App. 2005))

("[W]hether health care providers at UW Hospital are state employees depends on whether they are faculty, staff, or students of the university (in which case they are state employees) or employees of the University of Wisconsin Hospital and Clinics Authority (in which case they are not)."). A suit under §1983 may be brought only against government officials or employees or individuals who acted "under color of state law." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 (7th Cir. 2009). A private party may act under color of state law only when the party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

The plaintiff does not say whether Dr. Lee is faculty or staff of the University of Wisconsin or whether he is an employee of the hospital. The court cannot determine from the complaint whether Dr. Lee was a state actor or acted under color of state law when he treated the plaintiff. It is possible that Green Bay Correctional Institution contracted with the hospital to provide care for incarcerated persons at that prison. That might provide a basis for the court to conclude that Dr. Lee was acting as a state actor when he treated the plaintiff in May 2022, even if he is a hospital employee. Although it is unclear from the complaint whether the court may consider Dr. Lee a state actor for purposes of this lawsuit, the plaintiff "can[not] be charged fairly with knowing" whether Dr. Lee was a hospital employee or whether he rendered treatment pursuant to a contract between the hospital and the prison, which could make

7

him a state actor. See Rodriguez, 577 F.3d at 830. The court will assume for the purposes of screening only that Dr. Lee was acting under color of state law when he treated the plaintiff on May 11, 2022. The court will allow the plaintiff to proceed on his claim against Dr. Lee. Nothing in this decision precludes the defendants from seeking to dismiss this case later if they have evidence showing Dr. Lee is a hospital employee and was not a state actor when he treated the plaintiff.

The plaintiff also seeks to sue the hospital itself. Under §1983, a plaintiff may sue only *persons* who violate his rights while acting under color of state law. A hospital is not a "person" that may be sued under §1983. The court also explained above that the hospital itself is separate from the University of Wisconsin and is not considered a state entity. See Kreger-Mueller, 2020 WL 429448, at *2; Suchomel, 708 N.W.2d at 20. Although there are circumstances in which a private hospital could be constitutionally liable for mistreatment of an incarcerated person, the plaintiff does not suggest any such circumstances here. The court will dismiss the UW Hospital from this lawsuit because the plaintiff provides no basis to hold it liable for Dr. Lee's actions.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendant University of Wisconsin Hospital.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on Doctor Eric Lee at the University of Wisconsin-

Madison Hospital under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Lee to file a responsive pleading to the complaint within sixty days of service of the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.66** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 13th day of June, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**